Vince **MERTZLUFFT**, Clarence Rosemann, Harry Hayes, Otto Schoenborn, Plaintiffs–Appellants–Respondents,

and

Simonds Manufacturing Corporation, a Florida Corporation, Plaintiff,

v.

**BUNKER RESOURCES RECYCLING AND RECLAMATION, INC.**, a Missouri Corporation, Defendant–Respondent–Appellant.

Nos. 15405 & 15409.

Missouri Court of Appeals, Southern District, Division One.

Nov. 15, 1988.

Richard C. Witzel, John H. Herman, St. Louis, David L. Steelman, Salem, for plaintiffs-appellants-respondents.

John E. Price, Woolsey, Fisher, Whiteaker & McDonald, Springfield, for defendant-respondent-appellant.

GREENE, Judge.

In these consolidated appeals, defendant Bunker Resources Recycling and Reclamation, Inc. (Bunker) appeals from a judgment of the Circuit Court of Reynolds County, Missouri, granting a permanent injunction to prohibit Bunker's operation of a facility to incinerate infectious waste products at its plant in Bunker, Missouri. Plaintiffs Vince Mertzlufft, Clarence Rosemann, Harry Hayes and Otto Schoenborn (plaintiffs) appeal from that portion of the trial court's judgment denying their claim for attorneys' fees.

Plaintiffs, who are residents of Bunker, Missouri, filed a petition for injunctive relief under the citizen suit provision of § 260.415.3, RSMo 1986, which provides that "[a]ny person adversely affected in fact by any violation of sections 260.350 to 260.430 (Hazardous Waste Management Law) or of any rule or regulation promulgated thereunder may sue for injunctive relief against such violation." It further provides that the prevailing party in such actions shall be awarded reasonable attorneys' fees and costs of the action.

Count I of plaintiffs' second amended petition alleged that Bunker was receiving and handling infectious waste without having the proper permits from the Missouri Department of Natural Resources (DNR) to do so and, that by doing so, violated the provisions of §§ 260.350 to 260.430, which sections are known as the Hazardous Waste Management Laws. Plaintiffs requested the court to enjoin Bunker "from accepting, treating, processing, handling or storing any infectious waste," and that

plaintiffs recover their costs and reasonable attorneys' fees.

In Count II of their petition, plaintiffs sought injunctive relief on the theory that Bunker's operation of the incinerator created a nuisance, while Count III of the petition was an action for an injunction brought by an additional plaintiff, Simonds Manufacturing Corporation (Simonds), the manufacturer of the incinerator, which count alleged that Bunker's operation of the incinerator in violation of law damaged Simonds' business reputation and subjected it to potential civil liability. Simonds is not a party on appeal.

The trial court, acting on plaintiffs' motion, severed Count I for trial and, after hearing evidence, including testimony from plaintiffs Hayes and Mertzlufft, issued a preliminary injunction prohibiting Bunker from charging or loading the incinerator with hospital wastes, and restraining it from operating the incinerator. After hearing further evidence, the trial court entered the following judgment:

NOW, on this 16th day of September, 1987, Plaintiffs appear in person and by counsel. Defendant appears in person and by counsel. Both sides announce ready to proceed on the trial on the merits of Count I of Plaintiffs' Second Amended Petition.

WHEREUPON, evidence is adduced, the Court makes the following findings as to Count I of Plaintiffs' Second Amended Petition:

1. That Plaintiffs are persons adversely affected by the operation of the Defendant's facility;

2. That Defendant does not operate a licensed hazardous waste treatment facility, is not a solid waste processing facility permitted for the treatment of infectious waste, and is not a hospital;

3. That pursuant to Section 260.378 RSMo. infectious waste should not be taken to Defendant's facility.

WHEREFORE, it is ordered, adjudged and decreed by the Court, that based upon Count I of Plaintiffs' Petition, the Defendant, Bunker Resources Recycling and Reclamation, Inc., and its agents, employees, attorneys, contractors and subcontractors are hereby restrained from:

1. Operating the incinerator located in Reynolds County, Missouri at the facility of Bunker Resources, Inc., and/or

2. Charging or loading the incinerator located at Bunker Resources, Inc. with infectious wastes.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiffs be bonded in the amount of $100,-000.00, said bond to be approved by the Court, conditioned that all damages and expenses be paid in the event that the foregoing injunction be dissolved and that Plaintiffs be jointly and severally liable on said bond. It is further ordered that the preliminary injunction bond is discharged.

It is further ordered that as a matter of law, Plaintiffs shall be awarded no attorneys' fees and, consequently, the Court does not decide the reasonableness or amount of said fees. The Defendant is ordered to pay the costs of Count I of this action.

It is further ordered that this judgment is deemed a final judgment for purposes of appeal, pursuant to Rule 81.-06 of the Missouri Rules of Civil Procedure.

Bunker's attack on the judgment is three-pronged. It alleges the trial court erred in entering judgment for plaintiffs because (1) there was no substantial evidence that plaintiffs were "adversely affected in fact" by the operation of the incinerator, (2) there was no evidence that plaintiffs suffered irreparable harm as the result of the temporary operation of the incinerator, and no substantial evidence that the alleged harm to plaintiffs outweighed evidence that Bunker would lose money and its work force would become unemployed if the injunction were granted, and (3) plaintiffs' claims were moot since they had already been granted a writ prohibiting the DNR from allowing Bunker to operate the incinerator until it received the proper permit. On appeal, plaintiffs contend that since the trial court issued their

requested injunction, they are entitled to attorneys' fees as a matter of law, and the trial court erred in denying their request for same. We affirm that portion of the trial court's judgment concerning the issuance of the injunction and reverse that portion denying an award of fees to plaintiffs' attorneys.

Facts relevant to the disposition of Bunker's appeal are as follows. On February 20, 1987, Bunker, a Missouri corporation that is a subsidary of Decom Medical Waste Systems, a Canadian corporation, applied to the DNR for authority to construct an incinerator in Reynolds County for the purpose of disposing of infectious wastes. Infectious waste was defined by statutes in effect at the time of the application, which are § 260.200(8), which contains definitions applicable to solid waste disposal, and again in § 260.360(12) which contains definitions applicable to hazardous waste management. Both definitions class contaminated blood and blood products, surgical and autopsy wastes, contaminated laboratory wastes, dialysis unit wastes, cultures and stocks of etiologic agents, and like material known or suspected to be infectious, that had not been treated to DNR specifications, as infectious waste.

On May 5, 1987, the director of DNR, Frederick Brunner, by Nick Nikkila, staff director of the DNR's Air Pollution Control Program, wrote Bunker advising that Bunker's application for a construction permit had been approved, subject to conditions immaterial here. The letter stated, "You may consider this letter and the enclosed review to be your permit to construct. This permit in no way relieves you of your obligation to meet all air pollution control regulations or other federal, state, or local regulations." Construction of the Bunker facility began. The incinerator was completed and placed in operation on some date prior to July 1, 1987—the exact date of the start-up not being specified in the record. Infectious waste from the Chicago, Illinois area was hauled to the incinerator site and burned in the Bunker incinerator. The burning continued until July 27, 1987, when the plant was shut down for adjustment of the burning mechanism.

Plaintiffs' suit for a declaratory judgment and injunction was filed the next day. A second amended petition, Count I of which contains the subject matter relating to the cause of action on which the trial court entered the judgment under attack here, was filed on September 3, 1987. At no time during the period from May 5, 1987, when Bunker was given permission to construct an incinerator, and September 3, 1987, when the second amended petition was filed, did Bunker have a permit to operate a hazardous waste treatment facility or a solid waste processing facility authorized by DNR to treat infectious waste at the Bunker, Missouri site, nor did it receive one after the petition was filed.

It was stipulated that plaintiffs are residents of the city of Bunker. Plaintiff Harry Hayes lives about one-fourth of a mile from the Bunker incinerator. During the period it was in operation, Hayes saw flames "just shooting anywhere from about 6 to 10 foot" high. The flames were accompanied by dense black smoke coming out of the smokestack of the incinerator. The smoke caused Hayes' eyes and throat, as well as those of his wife, to burn. Another plaintiff, Vince Mertzlufft, lived approximately eight aerial miles from the incinerator site. On occasion, he had seen flames and black smoke coming out of the top of the incinerator. Mertzlufft felt that "from day one it (the incinerator) was out of control," and that its operation, as it was being operated with the attendant smoke and flames, decreased property values in the entire Bunker community.

Robert Myers, Deputy Sheriff of Reynolds County, was on the premises where the incinerator was located on the night of July 22, 1987. He observed "flames coming out of the top of the stack 15 to 20 feet in the air." He saw smoke, and also what appeared to be ash, which fell on his Jeep.

Following a hearing at which Hayes, Mertzlufft, and Myers testified to the facts detailed above, the trial court, on September 3, 1987, issued a preliminary injunction restraining Bunker from operating the incinerator and/or charging or loading the

incinerator with hospital waste "either infectious or noninfectious." On September 16, 1987, the trial court, after hearing further evidence, entered the judgment complained of here.

Appeals in injunction cases, as in other court-tried cases, are governed by the standards of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). It is our duty to uphold the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless the judgment is based on an erroneous declaration or application of law. *Smitty's Super Markets v. Retail Store, Etc.*, 637 S.W.2d 148, 155 (Mo.App.1982).

In Count I of their petition, plaintiffs allege that Bunker, through its agents or third parties, was transporting infectious waste to the Bunker incinerator site, and was burning it in the incinerator in violation of Missouri law. Pertinent portions of the existing statutes relating to these allegations are as follows.

In 1986, the Missouri General Assembly, through the passage of S.S.S.B. 475 and H.S.H.C.S. for H.B. 875 and 1649, revised the law pertaining to solid waste disposal and hazardous waste management, as well as providing for other aspects of environmental control. These revisions are contained in Chapter 260 of the Missouri statutes, with the solid waste disposal sections being §§ 260.200 through 260.245 and the hazardous waste management sections being §§ 260.350 through 260.433. Section 260.203.1, which is titled "Infectious waste, treatment of," provides that "[a]ny infectious waste transferred from the premises of the generator shall be taken to a hazardous waste treatment facility or a solid waste processing facility *permitted* for the treatment of infectious waste by the department of natural resources." (Emphasis ours.) This statute became effective July 1, 1987. Bunker at that time and, in fact, to this day, did not have and does not have a permit to operate either a solid waste processing facility or a solid waste disposal area. Section 260.378.1 states that "[a]ny infectious waste transferred from

the premises of the generator shall be taken to a hazardous waste treatment facility, a solid waste processing facility *permitted* for the treatment of infectious waste by the department of natural resources or a hospital as defined in section 197.020, RSMo." (Emphasis ours.) This section was also effective July 1, 1987.

Bunker did not, on July 1, 1987, have a permit from the DNR to operate a hazardous waste facility, and has not obtained one since that time. Bunker admits that it was not, on July 1, 1987, or at any time since, a hospital. Since Bunker was transporting infectious waste to the incinerator site without having a permit to do so, and was burning it at the incinerator site without having a permit to do so, it was violating the law. §§ 260.205.1 and 260.425.1.

In addition to other remedies provided to correct or punish violations of the hazardous waste management sections of the law, § 260.415.3 provides:

Nothing in this section or in any other provision of sections 260.350 to 260.430 shall exclude or impair any existing civil or criminal remedy, whether statutory or common law, for any wrongful action, including, but not limited to, actions to enjoin public or private nuisances. Any person adversely affected in fact by any violation of sections 260.350 to 260.430 or of any rule or regulation promulgated thereunder may sue for injunctive relief against such violation. The prevailing party in any such action for injunctive relief shall be awarded costs and reasonable attorneys' fees.

In its first point relied on in this appeal, Bunker contends that the trial court erred in granting plaintiffs' requested injunctive relief because there was no substantial evidence that plaintiffs were adversely affected in fact, as required by § 260.415.3, and, that absent such proof, private persons are not permitted to seek injunctive relief from the creation or maintenance of public nuisances. As a part of its argument on this issue, Bunker asserts:

Respondent's [sic] [plaintiffs'] proof that they were 'adversely affected in fact' consisted only of the parties' stipulation

that respondents resided in the vicinity of the incinerator. Respondents were content to rest upon this evidence, and offered no evidence in support of the allegations of paragraph 11 of Count I of the Second Amended Petition that Bunker Resources['] incinerator was causing noxious and toxic emissions and actually affecting respondents' residences. Respondents themselves did not even testify.

These statements are refuted by the record. Plaintiffs Hayes and Mertzlufft, as well as Deputy Sheriff Myers, testified at the hearing held on September 3, 1987, on which day the preliminary injunction was issued. On September 16, 1987, only 13 days later, additional evidence was presented to the trial court and the permanent injunction was issued. The same judge heard the evidence and issued the orders in each instance.

■ Any evidence received at a preliminary injunction hearing which would have been admissible at the hearing on whether a permanent injunction should be issued becomes part of the record on trial and need not be repeated. Rule 92.02(a)(2). The trial court did not abuse its discretion in considering the testimony of Hayes, Mertzlufft, and Myers as part of the evidence on which it based its judgment on the permanent injunction.

■ Bunker argues that plaintiffs had no standing to bring the injunction suit as they were not adversely affected by any violation of a statutory enactment by Bunker. While it is true, as Bunker states in its brief, that the term "adversely affected," as contained in § 260.415.3, has never been interpreted by Missouri courts, the words have no mystical connotation. "Adverse" means contrary to one's interests or welfare, and "affected," in the sense intended by the statute, means acted upon, influenced, or changed. American Heritage Dictionary of the English Language (7th Ed.).

In addition to the fact that their petition alleged the threat of personal injury and property damage to plaintiffs by the unlawful operation of the incinerator, the testimony of Hayes that he and his wife experienced physical discomfort after inhaling smoke coming from the incinerator, and that Bunker's method of operation of the incinerator caused Hayes to become nervous and upset, plus the testimony of Hayes and Metzlufft that, in their opinion, operation of the incinerator decreased their property values, demonstrated that they were "adversely affected in fact" by the operation of the incinerator. The mere allegation in their petition that they were threatened with specific injury by the operation of the incinerator gave them a legal right to raise a public policy issue concerning environmental interests, even though those interests were common to other members of the Bunker community. *Eyerman v. Mercantile Trust Co., N.A.,* 524 S.W.2d 210, 211–213 (Mo.App.1975). *See also Sierra Club v. Morton,* 405 U.S. 727, 734, 92 S.Ct. 1361, 1365–66, 31 L.Ed.2d 636 (1972). Plaintiffs were persons who allegedly were adversely affected by the incinerator's operation. As such, they were entitled to bring the suit for injunctive relief.

In its second point, Bunker contends plaintiffs failed to produce substantial evidence of two essential elements of their case: (1) proof of irreparable harm to plaintiffs as a result of the operation of Bunker's incinerator, and (2) proof that the public interest in granting the injunction outweighed the evidence of Bunker's lost profits, and unemployment of its work force, if the injunction were granted.

■ In the first prong of this argument, Bunker asserts that "Missouri law is crystal clear that before an injunction can issue, plaintiff must prove that he will suffer irreparable harm unless defendant's actions are restrained," citing *Vandever v. Jr. Coll. Dist. of Kansas City,* 708 S.W.2d 711 (Mo.App.1986), and other cases. Bunker claims that in order to be relieved of the obligation to prove irreparable harm, plaintiffs must show that the citizen suit provisions of § 260.415.3 relieved plaintiffs of their burden of proving all of the common law principles of an injunction case, including proof of irreparable harm. In support of this argument, Bunker contends the citizen suit provision of the statute is "only a

jurisdictional grant" since it "merely confers standing on private citizens; it neither imposes additional liability nor creates additional remedies." In support of this proposition, Bunker cites to us, as its only citation relied on, *United States v. Waste Industries, Inc.,* 556 F.Supp. 1301 (E.D.N.C. 1982) (*Waste Industries I*), where the Federal District Court was interpreting the Federal Resource Conservation and Recovery Act (RCRA), which is the federal counterpart of the Missouri Hazardous Waste Management Law.

While it is true that the District Court in *Waste Industries I* did hold that the citizen suit provisions of the federal act did not create or preserve an independent cause of action for private citizens, *Id.* at 1309, we note, sua sponte, since Bunker's attorneys neglected to so advise us in their brief filed here, that *Waste Industries I* was reversed on appeal on precisely the same point that we have under consideration. In reversing the judgment of the trial court, and remanding the cause for further proceedings, the United States Court of Appeals Fourth Circuit, in *United States v. Waste Industries, Inc.,* 734 F.2d 159 (4th Cir.1984) (*Waste Industries II*), held that sections of the Solid Waste Disposal Act which permit suit to be brought to restrain any person illegally handling, storing, treating, transporting or disposing of solid or hazardous waste function both as a jurisdictional basis and as an independent source of substantive liability. On page 167 of the opinion, the court observed that the provisions of the act authorizing injunctive relief were:

> [A] congressional mandate that the former common law of nuisance, as applied to situations in which a risk of harm from solid or hazardous wastes exists, shall include new terms and concepts which shall be developed in a liberal, not a restrictive, manner. This ensures that problems that Congress could not have anticipated when passing the Act will be dealt with in a way minimizing the risk of harm to the environment and the public.

The court also stated, at p. 168:

> "Finally, the landfill group contends that an injunction cannot issue because

CERC–LA provides an adequate remedy at law. This lawsuit was not brought in common-law equity, however, but pursuant to an express statutory command giving the EPA an injunctive remedy. Congress chose to enhance the courts' traditional equitable powers in order to protect the public and the environment.

We see from these pronouncements that not only does the final opinion in *Waste Industries* not stand for what Bunker says it does, it stands for exactly the opposite. The reasoning of *Waste Industries II* is sound, and applicable to the situation presented by the facts of the case before us.

We can think of few things that are potentially more dangerous to the public health than the indiscriminate and unfettered handling, transporting, and disposal of infectious waste. If the state waited until residents of a community, where an unlicensed hazardous waste disposal facility was located, became infected with a dread disease and thus suffered irreparable harm before injunctive relief was possible, it is entirely possible that infectious and contagious diseases of epidemic proportions could follow. Such an interpretation of the statute defies common sense. Plaintiffs were not obligated to allege and prove they had suffered irreparable harm in order to obtain injunctive relief, but were only required to prove that they were adversely affected in fact by the unlicensed operation, which they did.

■ Bunker's second prong of its second point relied on is that the trial court was required to balance the equities between the detriment to plaintiffs arising from the unlicensed operation of the incinerator, and Bunker's lost profits and unemployment of its work force if the injunction were granted, and that failure to apply such a test resulted in an erroneous application of law by the trial court.

The trial court found that Bunker was operating a facility for the processing and treatment of infectious waste without hav-

ing permits issued by the state of Missouri allowing it to do so, and that such operation was in violation of Missouri law. This finding was justified by the uncontroverted facts. Unlike a common-law action to abate a nuisance, the lawsuit here does not concern balancing two private but inconsistent uses of land, but does concern a statutory grant by the government allowing private citizens to seek injunctive relief against persons who violate the law. §§ 260.425.1 and 260.425.3. In such cases, the balancing of equities test urged by Bunker does not apply, as the application of such a doctrine could result in the continuation of illegal activity in derogation of the public interest. Followed to its logical conclusion, such an argument would have equal merit if applied to activities such as prostitution, illegal drug sales, and contract murder.

In cases such as this, where violation of a statute designed to protect the public is concerned, the law does not leave the appraisal of the effect of the law's violation on the public to either personal or judicial opinion. That which the statute declares to be unlawful is against the public interest and is injurious to the public interest. The right to enforce the law in such cases is not affected by the presence or absence of profit or advantage to the violator. *Lenroot v. Interstate Bakeries, Corp.*, 146 F.2d 325, 328 (8th Cir.1945). *See also City of St. Louis v. Friedman*, 358 Mo. 681, 216 S.W.2d 475, 478 (1948). The point has no merit.

■ In its final point, Bunker argues that plaintiffs sought and obtained an injunction in the Circuit Court of Cole County, Missouri, directing the DNR to prevent the operation of the incinerator by Bunker unless it had the proper permits to do so, and that such injunction was granted before the judgment in the case before us was entered. They deduce from this that the injunction issue in this case is moot, as plaintiffs had already received the relief they sought here through the issuance of the injunction by the Cole County Circuit Court.

On September 2, 1987, plaintiffs here, in an action titled State of Missouri ex rel. Vince Mertzlufft, et al., Relators, v. Fredrick A. Brunner and The Department of Natural Resources, State of Missouri, Respondents, Case No. CV187–1103CC, which case was filed in the Circuit Court of Cole County, Missouri, sought, and were granted on September 3, 1987, a preliminary writ of prohibition directing Brunner, who was the director of DNR, and the DNR itself, to:

[R]efrain from allowing any facility for the treatment of infectious waste to be operated without requiring the facility to be permitted as a hazardous waste treatment facility or a solid waste processing facility until further order of this Court.

On December 18, 1987, the preliminary order was amended so as to order Brunner and DNR to:

[R]efrain from allowing any facility to treat infectious waste transferred from the premises of the generator unless that facility is permitted as a hazardous waste treatment facility, permitted as a solid waste processing facility permitted for the treatment of infectious waste, or is a hospital as defined in § 197.020, RSMo, until further order of this Court.

Since Bunker had no permits to operate, it was affected by the preliminary writ.

In support of its position, Bunker cites Missouri case law to the effect that a case is moot and must be dismissed if the judgment rendered can have no practical effect upon an existent controversy because of a prior judgment on the same issue in a case that involved the same parties. The case law cited has no application here, as we are dealing with a different factual situation. The fact that a preliminary order in the Cole County case had been issued restraining Brunner and DNR could not render the present action moot, as the prohibitory action here was directed against a completely different party.

More to the point, a preliminary order merely preserves the status quo until the merits of plaintiffs' claim can be resolved. *St. Louis County v. Village of Peerless Park*, 726 S.W.2d 405, 410 (Mo.App.1987).

The preliminary order adjudicated nothing, and does not constitute a final judgment that could bar plaintiffs from pursuing an injunctive remedy against Bunker in the Reynolds County Circuit Court. *Zaegel v. Zaegel,* 697 S.W.2d 223, 225 (Mo.App.1985). The point has no merit.

Having found Bunker's appeal to be without merit, we turn to the cross-appeal of plaintiffs, which is Case 15409 on appeal.

In its judgment, the trial court, on the issue of attorneys' fees, found: "It is further ordered that as a matter of law, Plaintiffs shall be awarded no attorneys' fees and, consequently, the Court does not decide the reasonableness or amount of said fees."

It is plaintiffs' position that § 260.415.3 mandates the award of reasonable attorneys' fees since they prevailed in the injunction action, and the statute states that prevailing parties shall be awarded attorneys' fees.

Bunker counters by contending that plaintiffs offered no proof as to the reasonableness of attorneys' fees requested nor the necessity of legal services rendered and, therefore, the denial of attorneys' fees was proper, even if the trial court assigned an erroneous reason for the denial. It also argues that the propriety of an attorneys' fee award under § 260.415.3 must be determined by equitable principles and that it would be inequitable to award attorneys' fees in this case because, even if Bunker were violating the law by operating the incinerator, such violation resulted from Bunker's good faith reliance upon representations by agent of the DNR that because regulations governing the operation of the incinerator had not been issued by DNR, Bunker was free to operate the incinerator without a permit. Neither argument is sound.

In its judgment, the trial court found that Bunker had violated § 260.378, which prohibits the transport and acceptance of infectious waste by a facility that does not have a state permit to do so, and that plaintiffs were adversely affected in fact by such violation. On the basis of those findings, the trial court issued a permanent injunction.

Section 260.415.3 states that "[t]he prevailing party in any such action for injunctive relief *shall* be awarded costs and reasonable attorneys' fees." (Emphasis ours.) The word "shall" means that the award of attorneys' fees is mandatory, and places the award of attorneys' fees outside the area of judicial discretion, with the only discretion on this issue that can be exercised by the trial court being the reasonableness and amount of such fees, which was an issue the trial court admittedly did not reach. *Max Stovall Const. Co. v. Villager Homes, Inc.,* 684 S.W.2d 562, 565 (Mo.App.1984) (citing *Ellison v. Ralston,* 19 Mo.App. 537, 541 (1885) which addresses the mandatory meaning of the word "shall").

Plaintiffs did offer evidence on the attorneys' fees issue, which, for some reason unknown to us, was not considered by the trial court which merely stated plaintiffs were not entitled to attorneys' fees as a matter of law. We do not know, and cannot tell from the judgment, what matter of law the trial court was referring to. Since an award of attorneys' fees was mandatory, because of the legislature's mandate that attorneys' fees shall be granted to the successful party, that portion of the trial court's judgment was error.

Bunker argues that the trial court might have entered the type of judgment that it did on this issue because plaintiffs' attorneys, in their testimony, did not properly delineate the amount and reasonableness of their services. We decline to speculate on this, as the trial court indicated by its judgment that it did not consider their testimony at all.

The second prong of Bunker's argument on the attorneys' fee issue is its claim that the question of whether attorneys' fees should be awarded should be determined by equitable principles, and that since Bunker had, in good faith, operated the incinerator without a permit because they had been told by agents of the DNR that they could do so, they should be re-

lieved of the burden of paying the attorneys' fees.

If equitable principles could be applied to the issue, Bunker's argument might have some validity, as there is no doubt but that DNR's agents told Bunker that it could burn infectious waste in the incinerator without having a permit to do so. DNR's position on the matter is shown by the somewhat incredible trial testimony of Nick DiPasquale, Director of the Waste Management Program within the division of environmental quality of the DNR, whose department was responsible for the disposal of hazardous waste and solid waste. A synopsis of that testimony and conclusions to be drawn from it are as follows:

1. A Missouri processor of solid waste (e.g. common garbage and other discarded materials) must obtain a solid waste processing permit from the DNR, involving such safeguards as public notice by advertisement and mail, a demonstration of financial responsibility, and proof of responsibility for potential harm, among other things. As of the day of hearing, respondent had neither applied for, nor obtained such a permit.

2. Infectious waste can consist of the same materials as solid waste, but the materials may be contaminated with infectious agents. It includes blood and blood products, laboratory wastes, etc. The legislature has decreed that infectious waste must be treated by either (a) a hazardous waste facility, or (b) a solid waste processing facility permitted for the treatment of infectious waste, or (c) a hospital. Section 260.378.1.

3. As of the day of trial, the DNR had not promulgated regulations for waste processing facilities specifically permitted to treat infectious waste.

4. The DNR took the position that because there were temporarily no regulations on infectious waste treatment, such waste could be legally incinerated without *any* waste permits, i.e. without even a solid waste processing permit, until such regulations were adopted by DNR. Thus, if two bags of garbage, identical but for the inclusion of diseased tissue in the second bag, were brought to Bunker's facility, *only* the second bag, containing infectious waste, could be legally incinerated.

DNR's position on the issue was contrary to common sense, and was rejected by the Circuit Court of Cole County which issued a preliminary writ of prohibition against the DNR, restraining it from allowing the processing of infectious waste by a nonpermitted facility. The citizens suit provisions of § 260.415.3 are intended for circumstances such as we have here, when DNR's laxity in enforcing the environmental law allows violations of law to occur that threaten the health and lives of Missouri citizens.

Plaintiffs' litigation expenses in such circumstances, which were necessary to bring Bunker's violation of law to the attention of the judiciary, should be reimbursed by those who violated our environmental laws. Even if we assume Bunker's good faith reliance, the mandatory award of attorneys' fees to the prevailing party provided for in § 260.415.3 cannot be defeated by the application of equitable principles. Equity follows the law, and an equity court may not disregard the plain provisions of a statute and act on its own conception of what is right in a particular case where the rights of the parties litigant are clearly defined by statute. *Leggett v. Missouri State Life Insurance Company*, 342 S.W. 2d 833, 931–32 (Mo. banc 1960). If Bunker feels wronged by an award of attorneys' fees, its wrath should be directed against the agents of DNR who misled it, and not against plaintiffs who acted under the right given them by statute to protect the public against violation of our environmental protection laws.

In support of its argument that the trial court should balance equities on the attorneys' fee question, Bunker cites no Missouri case, but cites federal cases based on federal statutes which hold that the court may award attorneys' fees and, in so doing, may balance the equities as a part of its determination of the question. The federal statutes in those environmental cases provide for a discretionary award of attorneys' fees. *See* 15 U.S.C.A. § 2618(d) (1982); 28

U.S.C.A. § 2412(b) (Supp.1988); 42 U.S.C.A. § 7604(d) (1983). The state statute we are dealing with does not.

That portion of the trial court's judgment that restrains Bunker and "its agents, employees, attorneys, contractors and subcontractors" from operating the incinerator in question and/or charging or loading it with infectious wastes is affirmed. That portion of the judgment holding that as a matter of law plaintiffs are not entitled to attorneys' fees is reversed. The cause is remanded to the trial court with directions to hold an additional hearing on the issue of what attorneys' fees plaintiffs personally obligated themselves to pay for services rendered by their attorneys in this case, what legal services were rendered in their behalf by their attorneys, whether the fees charged for such services were reasonable and were for services rendered in this cause, what necessary and reasonable legal expenses were incurred in addition to the attorneys' fees, and what other evidence the trial court deems necessary for a determination of the issue, and after hearing such evidence enter an amended judgment that includes an award of attorneys' fees and costs as is provided for in § 260.415.3.

HOLSTEIN, C.J., and CROW, P.J., concur.