STATE of Missouri, ex rel. BUNKER
RESOURCE RECYCLING &
RECLAMATION, INC., Relator,

v.

Honorable J. Kent HOWALD,
Respondent.

No. 15766.

Missouri Court of Appeals,
Southern District,
Division Two.

February 15, 1989.

Motion for Rehearing and Transfer
Overruled and Denied March 9, 1989.

Application to Transfer Denied
April 18, 1989.

Richard C. Witzel, John H. Herman, Witzel & Kearns, St. Louis, for respondent.

John E. Price, John A. Cowherd, Woolsey, Fisher, Whiteaker & McDonald, Springfield, for relator.

MAUS, Judge.

By its petition in prohibition, the corporate defendant in the underlying action seeks to prevent the plaintiffs from taking the deposition of a witness as the "managing agent" of the defendant. This court issued its preliminary order. Rule 97.04. The following is an outline of the procedural background of the proceeding.

The plaintiffs in the underlying action are four residents of the Bunker, Missouri, area and Simonds Manufacturing Corporation, a Florida Corporation (Simonds). The petition is in three counts. By the first two counts, the individual plaintiffs prayed for an order restraining relator Bunker Resource Recycling & Reclamation, Inc. (Bunker) from accepting, treating, processing, handling or storing infectious waste at its incinerator facility near Bunker and attorney's fees and costs. Count I predicated that relief upon the basis Bunker did not have the required permit for handling such waste at that facility and its actions in doing so were in violation of the Missouri

Hazardous Waste Management Law. Count II sought the same relief upon the basis of nuisance. Count I was severed and the individual plaintiffs granted injunctive relief. See *Mertzlufft v. Bunker Resources Recycling*, 760 S.W.2d 592 (Mo. App.1988).

By Count III Simonds incorporates certain allegations of Count I and Count II. The prayer is for a similar order and attorney fees. Count III also alleges that Simonds manufactured the incinerator at that facility and that Bunker was not operating that facility in accordance with procedures and specifications prescribed by Simonds. Simonds further alleges that for reasons stated, Bunker's operation of the facility will result in damage to Simonds. The underlying action is pending upon Counts II and III. It also appears Bunker has filed a counterclaim.

On May 26, 1988, Simonds served a notice upon relator to take the deposition of "Raymond Adams, Managing Agent, Bunker Resources, Recycling & Reclamation, Inc." The notice specified the deposition was to be taken in the office of Simonds' lawyer in St. Louis. Adams is a resident of Ontario, Canada. Bunker filed a motion to quash that notice. A hearing was held upon that motion. However, the motion was never ruled upon.

Thereafter, Simonds served a similar notice upon Bunker to take the deposition of Adams at a later date. Again, Bunker filed a motion to quash the notice. That motion alleged that Raymond Adams was not the managing agent of Bunker. The parties stipulated that, subject to objections made at the prior hearing, the motion could be determined upon the basis of exhibits submitted at that hearing. Those exhibits are the record before this court. Bunker submitted the affidavits of its vice president and the affidavit of the president of Decom Medical Waste Systems, Inc. (Decom), an affiliated corporation. Essentially those affidavits state that Raymond Adams has acted as a technical consultant to Bunker, but was not and never had been an employee of Bunker and was not and never had been its managing agent. In response the plaintiffs filed fourteen documents. They include Exhibits H, I, J, P and Q which are on a letterhead of Decom and purport to be signed by Ray Adams, President; Exhibits O and S, letters from one of Bunker's lawyers to the Missouri Department of Natural Resources (DNR); Exhibit K, Bunker's Revised Engineering and Response Statement filed with DNR; and Exhibit R, the deposition of a newspaper reporter relating an interview he had with Ray Adams. The content of the exhibits submitted by the plaintiffs will be hereafter noted. Bunker's basic position is that the circuit court abused its discretion because there was no competent evidence that Raymond Adams was the managing agent of Bunker.

In this proceeding the parties have made some assumptions which have narrowed the issue to be decided. Those assumptions are as follows. That by virtue of Rules 57.03(a) and (b)(1) and 57.07(a)(2), a party may notice the deposition of a corporate party by a particular officer, director or managing agent as an alternative to naming a corporate deponent and describing the matters on which the examination is requested. See Rule 57.03(b)(4); *United States v. One Parcel of Real Estate at 5860 North Bay Road, Miami Beach, Florida*, 121 F.R.D. 439 (S.D.Fla.1988); *GTE Products Corp. v. Gee*, 115 F.R.D. 67 (D.Mass.1987); *Hi–Plains Elevator Machinery, Inc. v. Missouri Cereal Processors, Inc.*, 571 S.W.2d 273 (Mo.App. 1978). That the notice given was in proper form to notice the deposition of a corporate party. See *United Services of America, Inc. v. Empire Bank*, 726 S.W.2d 439 (Mo. App.1987); *Hi–Plains Elevator Machinery, Inc. v. Missouri Cereal Processors, Inc.*, supra; *Weldon, Williams & Lick, Inc. v. L.B. Poultry Co.*, 537 S.W.2d 868 (Mo.App.1976). That in the absence of any definition of the term "managing agent" as used in Rule 57 by statute, rule or controlling decision of this state, it is appropriate to use as a guide federal decisions construing the virtually identical Federal Rules of Civil Procedure. See Federal Rule of Civil Procedure 30; *Kingsley v. Burack*, 536 S.W.2d 7 (Mo. banc 1976); *State ex rel.*

*Kincannon v. Schoenlaub*, 521 S.W.2d 391 (Mo. banc 1975).

■ Without deciding the same to be true, this court will resolve this proceeding upon the basis of those assumptions. That being so, the issue to be decided is the issue tendered by the parties; i.e., whether or not there was before the circuit court substantial admissible evidence that Raymond Adams was the managing agent of relator.

As stated, Bunker contends there was no admissible evidence to support a determination that Adams was a managing agent of Bunker. It concludes the competent evidence establishes only the following facts:

    a. Raymond Adams' wife owns the controlling interest in the parent corporation of Relator. (Ex. K).

    b. Raymond Adams owns stock in a Canadian corporation which leases the incinerator equipment to Relator. (Ex. K, Attachment 1).

    c. Raymond Adams and the Canadian corporation, Decom Medical Waste Systems, Inc., have provided financial responsibility assurances on behalf of Relator to the Department of Natural Resources (Ex. O), and

    d. Raymond Adams has served as an outside technical consultant concerning the construction and start-up of the incinerator at Bunker. (Ex. E, S).

It bases that conclusion upon the proposition that except for Exhibits K, L, O and S the evidentiary material submitted by the plaintiffs could not be properly considered.

For example, Bunker contends Exhibits H and I, purporting to be letters written by Adams, were not authenticated as letters actually written by Adams. In making this contention, Bunker overlooks the content of Exhibit K, the Revised Engineering and Response Statement it filed with DNR. Exhibit K includes the following:

    The August 26, 1987 letter from Mr. R.A. Adams to Mr. William Ford [Exhibit I] referenced on page 2 of the Department's December 22, 1987 letter was intended to refer to ownership of the stock of Bunker Resource Recycling and Recla-

mation, Inc. The September 4, 1987 letter from Mr. R. Adams to Mr. Jim Hull [Exhibit H] and the October 2, 1987 letter from Ms. Treva J. Hearne to the Department which referred to ownership of Bunker Resource Recycling and Reclamation, Inc. by Decom Medical Waste Systems, Inc. were intended to refer to the incinerator equipment.

Bunker established the authenticity of Exhibits H and I.

Bunker also makes a similar argument that a purported letter of Adams to Mr. J. Turner attached to Exhibit M has not been authenticated. In making that argument, Bunker overlooks the following legal precept.

    The law is that the mere fact that a letter purports to have been written and signed by one with authority to do so is of itself insufficient to establish the authenticity and genuineness of the letter; however, there is a well recognized exception to that rule, which is that letters received in reply to other letters proved to have been sent to the party are admissible.

*Crawford v. Metropolitan Life Ins. Co.*, 167 S.W.2d 915, 923 (Mo.App.1943). Exhibit M establishes that said letter was received by J. Turner in response to a letter he wrote to Ray Adams.

Bunker only indirectly questions the identification of the individual who made statements concerning the operation of Bunker to the newspaper reporter whose deposition and articles constitute Exhibit R. "Where one is called by telephone with his number and answers, admitting himself to be the person called, testimony of the caller relating the conversation ensuing is held admissible." *State ex rel. Strohfeld v. Cox*, 325 Mo. 901, 30 S.W.2d 462, 464 (banc 1930). Under this rule, the deposition establishes the statements were made by Raymond Adams.

In addition to questioning the authenticity of statements attributed to Adams Bunker argues, "Missouri law is clear that neither the fact nor the scope of an alleged agency relationship can be established by the extrajudicial statements, declarations

or admissions of the alleged agent. *Southwestern Bell Telephone Company v. Roussin,* 534 S.W.2d 273, 276 (Mo.App.1976)." That general rule is subject to qualification. "The holding in the *Mechanics' Bank case* [182 S.W. 989 (Mo. banc 1916)] in substance was that an agency cannot be proven by the mere declarations of the alleged agent without some independent corroborating evidence." *State ex rel. Smith v. Bland,* 353 Mo. 1073, 186 S.W.2d 443, 446 (1945). Further, the following is a corollary rule.

The agency relationship is established when the credible facts, taken as a whole, disclose that a party is acting for or is representing another by the latter's authority. *Smoot v. Marks,* 564 S.W.2d 231, 236 (Mo.App.1978). Agency may be implied or inferred and may be circumstantially proved by conduct of the purported agent exhibiting pretense of authority with knowledge of the alleged principal coupled with acquiescence.

*Jordan v. Robert Half Personnel Agencies of Kansas City, Inc.,* 615 S.W.2d 574 (Mo. App.1981). Further, "agency cannot be established by proof of acts, declarations or conduct of the alleged agent, unless same are known to the principal or are so often repeated that knowledge on the part of the principal is implied." *Wyler Watch Agency v. Hooker,* 280 S.W.2d 849, 855 (Mo.App. 1955).

There was independent proof of Adams' agency. That proof is supplied by the letter of one of Bunker's lawyers to DNR. That letter discussed the operation of the facility and Bunker's compliance with the directives of DNR. It concludes that "I am writing this letter on behalf of Mr. Ray Adams who has been fully informed of the contents and approves same. Mr. Dan Patterson (vice president of Bunker) has also been fully informed of the contents and approves same." Bunker's Revised Engineering and Response Statement provides ratification of statements made by Adams on its behalf. The circuit court could also find the agency of Adams was also established by proof that his acts, declarations and conduct were so often repeated as to imply knowledge and ratification by Bunk-

er. See *Wyler Watch Agency v. Hooker,* supra.

The application of the above rules establish that the following exhibits were admissible:

A letter dated September 4, 1987, purportedly signed by 'R. Adams' on behalf of 'Decom Medical Waste Systems, Inc.' (Exhibit H)

A letter dated August 26, 1987, purportedly signed by 'R.A. Adams' on behalf of 'Decom Medical Waste Systems, Inc.' (Exhibit I)

The 'Revised Engineering and Response' of Bunker Resource Recycling and Reclamation, Inc., submitted to the Missouri Department of Natural Resources dated January 7, 1988 (Exhibit K)

The 'affidavit of James Turner' with attachments (Exhibits M)

A letter dated October 2, 1987, to Mr. James Hull from Treva J. Hearne, with attachments (Exhibit O)

The deposition of Terry Ganey, a newspaper reporter for the St. Louis Post Dispatch taken on May 18, 1988 (Exhibit R)

A letter dated August 21, 1987, to Dr. Frederick Brunner from Treva J. Hearne (Exhibit S)

For reasons hereafter stated, it is not necessary to describe and consider the admissibility of the other exhibits.

Finally, Bunker argues that Raymond Adams is not a "managing agent" of Bunker within the meaning of Rules 57.03(a) and (b)(1) and 57.07(a)(2) because he is not an employee of Bunker and not under the control of Bunker. It is true that generally a managing agent is an employee of a corporate deponent. That relationship is an element of the tests often repeated for determining if an individual is a managing agent. Annot., Discovery—Corporation—Managing Agent, 98 A.L.R.2d 622 (1964).

However, an exception to the necessity of that relationship to constitute one to be a managing agent has been appropriately summarized.

The law concerning who may properly be designated as a managing agent is sketchy. Largely because of the vast variety of factual circumstances to which the concept must be applied, the standard, like so many others in the law, remains a functional one to be determined largely on a case-by-case basis. ... Nearly all the published cases relating to the issue are from the district courts, and nearly all of those decisions concern whether an employee of a corporation should be designated a managing agent. ... Only rarely have courts even had occasion to examine whether a de facto relationship with a corporation, rather than a de jure one, furnishes a basis in law for designating a managing agent. ...

In the Manor Investment [43 F.R.D. 299 (S.D.N.Y.1967)] case, the individual designated as a managing agent was not shown to hold any office or formal position in the corporation. He did, however, control its affairs, performing functions 'of a supervisory nature' related to the activities in question. More generally, the individual exercised 'supreme' authority within the corporation. ... In addition to having practical control of the firm's destiny, the individual owned all the stock in the enterprise. In concluding that the individual was indeed a 'managing agent' of the enterprise, Judge Weinfeld found 'such unity of interest between [the company] and [the owner], that it may be referred to as his "alter ego."' ... The learned judge thus drew on the familiar doctrine of law permitting courts, where the result would otherwise be unjust or inequitable, to pierce the corporate veil, a veil that ordinarily shields investors from liability for contractual obligations or tortious acts by the corporation and that protects the corporation from being bound by the independent acts of investors.

*Founding Church of Scientology v. Webster*, 802 F.2d 1448, 1452 (D.C.Cir.1986), cert. denied, —— U.S. ——, 108 S.Ct. 199, 98 L.Ed.2d 150, (1987). Also see *Robbins v. Abrams*, 79 F.R.D. 600 (S.D.N.Y.1978); An-

not., Discovery—Corporation—Managing Agent, supra.

The content of the exhibits enumerated as admissible need not be fully set forth or even summarized. The circuit court could have found the following exhibits were offered for the following purposes. That exhibit I, a seven-page letter to DNR, was to describe in detail the operation and ownership of Bunker. That exhibit includes the following: "Further to our recent discussions, we are pleased to introduce ourselves to you. We are a member of the Argyro Group of Companies and as such benefit from the group's long term experience in the health care industry and in the handling of biomedical materials and pharmaceuticals." That letter concludes with the following:

K.M.L. Investments Ltd., South Carolina, is fully owned by K.M.L. Florida Investment Ltd. which in turn is fully owned by the Argyro Group, which is fully owned by my family. ... Most important of all, any one dealing with our companies enjoys a high degree of comfort knowing that not only are we responsible corporate citizens, but also that we have enough financial depth and stability to ensure the delivery of any commitments we undertake.

That letter was signed by R.A. Adams.

That exhibit H, a subsequent letter, was written to establish who owned Bunker and who had authority to sign on its behalf. That exhibit includes the following: "This letter will serve to authorize Dan Patterson, in his capacity as Operator and Manager of Bunker Resources Recycling & Reclamation, Inc., to sign on behalf of the said Company. Bunker Resources Recycling & Reclamation, Inc. is under the co-ownership of Decom Medical Waste Systems, Inc., and Ray Adams." Exhibit H was also signed by R. Adams, President.

That exhibit K, a Revised Engineering and Response Statement of Bunker, was submitted to DNR to clarify conflicting statements of ownership of Bunker and the control of that corporation. Exhibit K includes the following:

Likewise, when a business was acquired in the United States, in most instances Mr. Adams made the decision to retain both the employees and the name of the existing company, thus acquiring both the loyalty of those employees and the already existing business good will.

. . . .

We believe the most important thing for the Department to remember is that the corporations that *Mr. Adams has been forming* in order to expand his medical and solid waste business are wholly owned by *his family or, if acquired, the family has a controlling interest.* (emphasis added)

That exhibit M was written by Raymond Adams to James Turner to defend Bunker against criticism of its operations. Exhibit M includes the following: "In other words, Mr. Turner, there is some very dirty business going on and *we* are going to stand and fight it to the bitter end. . . ." (emphasis added)

These extracts, when considered in context with the purpose for which the letter was written or statement was published and with the remainder of the exhibits determined to be admissible, constitute sufficient evidence from which the trial court could conclude that Bunker is the alter ego of Raymond Adams and that he is the managing agent of that corporation.

By its second point, Bunker contends the circuit court acted in excess of its jurisdiction in denying the motion to quash because the notice in question required Raymond Adams, a resident of Canada, to give a deposition in St. Louis. The control of the situs of a deposition of a party is within the discretion of a court considering a protective order. *Continental Federal S. & L. Ass'n v. Delta Corp.*, 71 F.R.D. 697 (D.C.Okl.1976); *State ex rel. Von Pein v. Clark*, 526 S.W.2d 383 (Mo.App.1975). In considering this point, it must be emphasized that as a general rule in absence of exceptional circumstances a defendant, even though a party, should not be compelled to travel from his home to a distant site for a deposition selected by the plaintiff. *Turner v. Prudential Insurance Company of America*, 119 F.R.D. 381

(D.C.N.C.1988). Among the factors bearing upon the court's exercise of discretion in this case are the following. The deposition being taken is that of Bunker. Bunker's principal place of business is Bunker, Missouri. That normally, the deposition of a corporation should be taken at its principal place of business. *Less v. Taber Instrument Corporation*, 53 F.R.D. 645 (W.D.N.Y.1971); *Sugarhill Records, Ltd. v. Motown Record Corp.*, 105 F.R.D. 166 (1985). The exhibits establish that Raymond Adams frequently travels to Missouri and it will not be a financial burden upon Bunker for him to do so for the purpose of the deposition. Id. The plaintiffs have been compelled to expend a great deal of needless effort to establish Raymond Adams was a "managing agent" of Bunker. *South Seas Catamaran, Inc. v. Motor Vessel "Leeway"*, 120 F.R.D. 17 (D.C.N.J. 1988); *Robbins v. Abrams*, supra. Considering all relevant factors, the circuit court's failure to quash the notice upon the basis asserted in Bunker's second point was not an abuse of discretion. Robbins v. Abrams, supra. The preliminary order was improvidently issued and is quashed.

FLANIGAN, P.J., and PREWITT, J., concur.