**SUGARHILL RECORDS LTD., Plaintiff,**

v.

**MOTOWN RECORD CORPORATION, MCA Distributing Corp., and Rick James, Defendants.**

No. 83 Civ. 6176 (SWK).

United States District Court, S.D. New York.

March 19, 1985.

Krieger, Ferrara, Flynn & Catalina by Harold Krieger, Frank Catalina, New York City, for plaintiff.

Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey by Alan M. Gelb, Jeffrey M. Mitchell, Daniel A. Eigerman, New York City, for defendant Motown Record Corp.

Gross, Shuman, Brizdle, Laub & Gilfillan by Leslie M. Greenbaum, Buffalo, N.Y., for defendant Rick James.

## MEMORANDUM OPINION
## AND ORDER

KRAM, District Judge.

The above-captioned action is before this Court upon the following three motions: 1) a motion by defendant Motown Record Corporation ("Motown") to vacate the Notice of Deposition served by plaintiff seeking the deposition of a Motown employee, Brenda Boyce, and for a protective order directing that any depositions of Motown be taken in California; 2) a motion by plaintiff to compel defendant Rick James ("James") to appear for his noticed deposi-

tion; and 3) a motion by James to forestall that deposition and to have it taken in Buffalo.

## BACKGROUND

This case arises out of the production of a record album entitled "Cold Blooded." Rick James, a well-known songwriter, composer, producer, and performer, composed the lyrics for nine songs to be contained on "Cold Blooded," which has been recorded and is available on phonograph records and cassette tapes.[1] James sings all nine songs on the album. Three of the songs also feature guest vocal appearances: Smokey Robinson appears in "Ebony Eyes"; Billy Dee Williams appears in "Tell Me (What You Want)"; and Melvin Glover, Guy Todd Williams, and Eddie Morris appear in a "rap" in "P.I.M.P. the S.I.M.P."

Melvin Glover, a/k/a "Mele Mel," Guy Todd Williams, a/k/a "Raheim," and Eddie Morris, a/k/a "Mr. Ness," along with three other performers, Nathaniel Glover, a/k/a "Kid Creole," Keith Wiggins, a/k/a "Cowboy," and Joseph Saddler, a/k/a "Grand Master Flash," performed together as a group known as "Grand Master Flash and the Furious Five" (hereinafter "the Group"). In 1980 those six performers, individually and collectively as the Group, entered into a recording agreement with the plaintiff herein, Sugar Hill Records, Ltd. ("Sugarhill"), a corporation engaged in producing and manufacturing phonograph records. Sugarhill alleges that this recording agreement was an exclusive agreement in that the artists agreed, as part of the contract, not to "perform or render any services for the purpose of making phonograph records" for any one other than Sugarhill. (Exhibit A to the Complaint, ¶ 12.-02.)[2]

Sugarhill commenced this action against James, Motown (the manufacturer of albums), and MCA Distributing Corporation ("MCA") (the distributor of the album).[3] Sugarhill alleges that defendants' use of the performances of three members of the Group for the album "Cold Blooded" constituted tortious interference with its contractual relationship with the performers (individually and as members of the Group) and further constituted a misappropriation of its rights under the recording agreement.

Sugarhill also asserts a claim for misdescription of goods under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), along with pendent state law claims, arising out of the packaging of the album. The album jacket, the record sleeve, and the label insert with the tape cassettes produced with the early pressings of the album credited the performance of Melvin Glover, Williams, and Morris, as that of "Grand Master Flash." The record sleeve further indicated that "Grand Master Flash appears courtesy of Sugarhill Records Ltd." Sugarhill contends that these statements are untrue in two regards: first, Sugarhill claims that the name "Grand Master Flash" refers to one individual—Joseph Saddler—and that that individual is not one of the performers appearing in "P.I.M.P. the S.I.M.P."; second, Sugarhill denies having consented to the appearance of any of its artists. Both of these contentions are disputed by defendants. Motown, in fact, specifically claims that one of its employees, Brenda Boyce, Director of Creative Administration of Motown Record Corporation, obtained Sugarhill's consent telephonically from one Diane Moore—an employee at Sugarhill supposedly responsible for granting these so-called side man consents.

---

1. "Cold Blooded" will be referred to in this opinion as an album. The Court intends for that description to encompass all the various forms in which "Cold Blooded" is available.

2. Sugarhill alleges in paragraph 13 of its Complaint that such performances for others were prohibited "without the express written consent of" Sugarhill. The Court does not see any provision in paragraph 12.02 of the contract which

discusses the issue of prior consent from Sugarhill.

3. MCA, after reaching a settlement with Sugarhill, moved for a dismissal of the case as to it. A motion was necessitated by the refusal of Motown and James to stipulate to the discontinuance against MCA. The motion was granted.

Sugarhill moved for a preliminary injunction enjoining the sale of the album with either the designation that "Grand Master Flash" appears thereon or with the recorded performance of any members of the Group. In response to that motion, Motown agreed to remove all references to Grand Master Flash and Sugarhill for future pressings of the album. The Court, finding that Sugarhill had not met its burden of showing irreparable harm from defendant's sale of the album, especially without references to Grand Master Flash or Sugarhill's consent, denied Sugarhill's motion. 570 F.Supp. 1217. The Court, however, directed the parties to proceed with discovery forthwith.

In an apparent attempt to comply with this Court's directive regarding expedited discovery, Sugarhill served a series of discovery requests, including a Notice of Deposition of Motown by Brenda Boyce, to be held at the Southern District courthouse, and a Notice of Deposition of Rick James, also to be held at this courthouse. These motions ensued and discovery has been essentially suspended during the time that they have been pending.

## DISCUSSION

1. Motown's Motion to Vacate and for a Protective Order

 Pursuant to Rule 30 of the Federal Rules of Civil Procedure, a party can request the deposition of any other party to the litigation by serving a notice of deposition upon that party. *See, e.g., Spaeth v. Warner Bros. Pictures, Inc.,* 1 F.R.D. 729, 730 (S.D.N.Y.1941). The party to be deposed can be a natural person or a corporation. *See* Fed.R.Civ.P. 30(a) and (b)(6). If the person to be deposed is a corporation, the party seeking discovery has the choice either to designate an appropriate individual or to describe the subject matter of the

questions to be asked and allow the corporate deponent to designate its own spokesperson familiar with that subject matter. Fed.R.Civ.P. 30(b)(6) ("This subdivision [permitting the latter option] ... does not preclude taking a deposition by any other procedure authorized in these rules."); *see also* Fed.R.Civ.P. 30(b)(6) advisory committee note to 1970 amendments ("This procedure supplements the existing practice whereby the examining party designates the corporate official to be deposed."). If the party seeking discovery chooses the former option, then the person designated must be "an officer, director, or managing agent" of the corporate deponent. *See, e.g., Proseus v. Anchor Line, Ltd.,* 26 F.R.D. 165, 166–67 (S.D.N.Y.1960); *Williams v. Lehigh R.R. Co.,* 19 F.R.D. 285 (S.D.N.Y.1956). If the individual so designated is not an officer, director, or managing agent, but merely an employee, then the party seeking the deposition must proceed as for an ordinary non-party witness. *See, e.g., Alfred Bell & Co. v. Catalda Fine Arts, Inc.,* 5 F.R.D. 327, 329 (S.D.N.Y. 1946); *Czuprynski v. Shenango Furnace Co.,* 2 F.R.D. 412 (W.D.N.Y.1942).

In this case, Sugarhill served a Notice of Deposition upon the corporate defendant Motown. Sugarhill chose, in that Notice, to designate Brenda Boyce as the individual it wished to depose representing Motown.[4] Sugarhill is seeking, through this deposition, to discover the facts supporting Motown's argument that it received Sugarhill's consent to use the performances of the artists from the Group. This is a central and hotly disputed issue in this case. Motown moves for an order vacating that Notice on the ground that Brenda Boyce is not an officer, director, or managing agent of Motown. Sugarhill, in response, urges this Court to allow the deposition as noticed "[i]n the interest of judicial economy,"

---

**4.** Although the Notice is less than perfectly drafted, indicating only that the deposition of "Brenda Boyce of Motown" is desired, it is clear that Sugarhill intended this Notice, and the deposition itself, to represent discovery of Motown,

and not of Brenda Boyce in an individual capacity. Motown's arguments that this Notice should be viewed as directed to Brenda Boyce, and not Motown, is, therefore, unavailing.

apparently arguing that she does have the requisite capacity.[5]

Motown, in support of its motion, submitted an affidavit of counsel (not of anyone at Motown who could detail Boyce's position at the corporation or role in this case). In that affidavit, counsel refers to Boyce merely as "an employee." Counsel also makes the facile argument that "unless a corporate officer or director is specified, the corporation may chose [sic] ... the person by whom it desires to be deposed." Affidavit of Daniel A. Eigerman, Esq., ¶ 6. This argument completely ignores Boyce's possible status as "managing agent."

■ It is clear that Boyce is neither an officer nor a director of Motown. The only remaining issue, therefore, is whether Boyce is a "managing agent" of Motown. Several factors have been enunciated which must be examined in determining whether a person is a "managing agent." Those are as follows: 1) whether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters; 2) whether the individual can be relied upon to give testimony, at his employer's request, in response to the demand of the examining party; 3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which information is sought by the examination; 4) the general responsibilities of the individual *respecting the matters involved in the litigation,*" *Kolb v. A.H. Bull Steamship Co.,* 31 F.R.D. 252, 254 (E.D.N.Y.1962) (emphasis in original); and 5) whether the individual can be expected to identify with the interests of the corporation. *See, e.g., Tomingas v. Douglas Aircraft Co.,* 45 F.R.D. 94, 96 (S.D.N.Y.1968). The burden of proving that she is a managing agent rests on

Sugarhill. *See, e.g., Proseus,* 26 F.R.D. at 167.

■ Plaintiff has not submitted any evidence regarding Boyce's role at Motown, but has been chosen to rely on Boyce's own affidavit, submitted in opposition to Sugarhill's earlier motion for a preliminary injunction. From this affidavit the following can be determined regarding Boyce's role at Motown. She serves as the Director of Creative Administration. It is not clear what responsibility this title, or the job generally, invests in Boyce. It appears that she is charged with the responsibility for obtaining side man clearances for Motown, including those at issue herein. She allegedly conducted all the correspondence with Sugarhill aimed at securing the consents at issue herein. Affidavit of Brenda Boyce, ¶¶ 11–15. She claims to have followed "the usual procedures," *id.,* ¶ 16—presumably those referred to earlier as *"our* practice," *id.,* ¶ 10 (emphasis added). Boyce claims to have obtained oral consents from one Diane Moore, a Sugarhill employee. She sent a letter agreement to Moore to obtain Sugarhill's written consent. That letter was concluded and signed by Boyce, "Sincerely, MOTOWN RECORDS CORPORATION, Brenda M. Boyce, Director of Creative Admin." Although Boyce never received those written consents back from Moore, she did expect that they would be signed and returned. "Accordingly," she stated, *"I saw no problem* in proceeding with the sale of the album with the credits that had been granted." *Id.,* ¶ 17 (emphasis added). When advised that Sugarhill claimed that the use of the performances of the members of the Group constituted interference with Sugarhill's exclusive recording agreement and a violation thereof without Sugarhill's written consent, Boyce *"merely assumed"* that the writer of Sugarhill's missive simply had

---

**5.** This argument is not articulated very clearly; however, the Court has read Sugarhill's papers broadly to fully understand the argument. At the third page of Sugarhill's Memorandum in Opposition, Sugarhill argues, "[i]t is plaintiff's contention that defendants [sic] have demonstrated that capacity themselves [sic] in the very

documents they [sic] filed in this Court.... Certainly if Brenda Boyce had the capacity to execute agreements on behalf of Motown with regard to the use by the latter of performers under exclusive contract to the plaintiff, she has the capacity to testify with regard to her activities in that area."

not yet been informed about the forthcoming written consent. *Id.*, ¶ 16 (emphasis added).

Upon reviewing her affidavit, it appears that Boyce does identify with Motown's interests; that she is the sole employee at Motown involved and knowledgeable about the alleged consents at issue here; that she had authority to speak for Motown in this regard and had the authority to exercise certain judgment and discretion in the processing of this album; and that she can be relied upon to give testimony on Motown's behalf. As to this last item, it is clear that Motown trusts Boyce to give testimony on its behalf as evidenced by the fact that Motown itself called upon her to provide testimony, in the form of an affidavit, in opposition to Sugarhill's motion for a preliminary injunction.

I am to resolve close questions regarding the status of an employee as "managing agent" in favor of the examining party, since the issue of whether the witness' testimony can be used as a statement by the defendant still remains to be resolved at trial. *See, e.g., Tomingas*, 45 F.R.D. at 97; *United States v. The Dorothy McAllister*, 24 F.R.D. 316, 318 (S.D.N.Y.1959). Since neither party engaged in the proper analysis to determine whether Ms. Boyce is a managing agent, I think there are doubts remaining regarding that status. Nonetheless, based on my analysis, I feel that the doubts should be resolved, at this stage, in Sugarhill's favor so that discovery can at last proceed. I find, therefore, that Sugarhill has satisfied its burden of proof, but only barely. Since, however, I find that this is a close question, I am hereby authorizing Motown, if it so chooses, to produce someone other than Boyce with knowledge of both Motown's practices regarding sideman clearances and the consents allegedly obtained in this case, to speak on its behalf.

Motown seeks, in the alternative, to have this deposition, and presumably any other deposition of Motown that may be necessary, conducted in California. Motown relies on the general rule that corporate defendants are deposed at the location of their principal place of business. *See, e.g., Buryan v. Max Factor & Co.*, 41 F.R.D. 330, 332 (S.D.N.Y.1967); *Haymes v. Columbia Pictures Corp.*, 16 F.R.D. 118, 123 (S.D.N.Y.1954). Motown further argues that Sugarhill's document request is burdensome and that this supports its position that the production of those documents, with the deposition, should be done in California.

The general rule relied on by Motown is not one without exception. Corporate defendants are frequently deposed in places other than the location of the principal place of business, especially in the forum, for the convenience of all parties and in the general interests of judicial economy. The location of the deposition is in my discretion. *Tomingas*, 45 F.R.D. at 97. In this case, I feel it should be conducted, as noticed, within the forum. Motown is a large corporation and cannot seriously contend that travel on behalf of the corporation by one of its managing agents is unexpected or that such travel to New York for deposition imposes a severe burden on it. *See Reliable Volkswagen Sales and Service Co. v. World-wide Automobiles Corp.*, 26 F.R.D. 592, 594 (D.N.J.1960). Moreover, Motown does not allege, nor do I think it could, that the absence of Boyce, or another individual witness, from the work place for a brief period imposes a substantial hardship on the corporation. *See Tomingas*, 45 F.R.D. at 97.

Furthermore, I do not find that Sugarhill's document request is oppressive or burdensome (or at least Motown has not demonstrated it so to be). In spite of the breadth of language used by Sugarhill, there is no indication that the records sought are voluminous. Motown's New York counsel presumably will want to review the documents before turning them over to Sugarhill. That can be done just as easily in counsel's New York office as in Los Angeles by New York counsel. Therefore, Sugarhill's document request does not require that the deposition take place in California. Finally, and most significantly, convenience and efficiency are best served

by taking the deposition in New York. At least three attorneys must be present for the deposition. Two are from New York City and the other from Buffalo. Rather than make all three attorneys (and probably others with them) travel to Los Angeles, it seems wiser to have one witness come here.[6] Motown is hereby given the choice, however, of producing its witness in New York or paying the airfare and hotel costs of counsel for Sugarhill incurred if the deposition is conducted in California. *Cf. Hyam v. American Export Lines*, 213 F.2d 221, 223 (2d Cir.1954) (Harlan, J.) ("judge ... may order the deposition to be taken, if not at the forum, at an appropriate distant place under terms whereby the reasonable expense thereof may ultimately be reflected in the taxable costs"); Local Rule 15 of the Civil Rules for the Southern District of New York (party seeking to have deposition taken in excess of 100 miles from courthouse may be required to pay the expense of the attendance of one counsel for each adversary party).

On the other hand, should Sugarhill determine that it wishes to depose any other Motown witnesses, it shall pay the reasonable expenses incurred by Motown in producing those witnesses in New York. *See Yannitelli v. Navieras de Puerto Rico*, 103 F.R.D. 413, 417 (S.D.N.Y.1984); *Moore v. George A. Hormel & Co.*, 4 F.R.D. 15 (S.D.N.Y.1942).

In accordance with this ruling, the parties are to agree on a time and place, for the deposition of Boyce, to be held within thirty days of this Order. If Motown chooses to produce someone else, they are to give reasonable notice to all other parties.

2. Motions Regarding Deposition of Rick James.

Sugarhill noticed the deposition of Rick James, to be held in this courthouse. Thereafter Sugarhill consented to an adjournment of the deposition. Defendant James resisted efforts to re-schedule the deposition prior to the conclusion of a tour

he was then engaged in. Sugarhill did not want to wait that long and this motion followed. In response, James cross-moved for a protective order providing that the deposition be taken in Buffalo after the completion of the tour.

Insofar as James's motion seeks to have his deposition forestalled until after the completion of his tour, it is moot because the tour has been completed. Insofar as James seeks to have his deposition taken in Buffalo, his motion is denied. On balance, the Court finds that New York is at least as convenient a forum for the deposition as would be Buffalo. Certainly, plaintiff has been inconvenienced enough by the delay in obtaining discovery occasioned by these motions. In light of these factors, the Court will not change plaintiff's chosen forum for the deposition. Since James has not, and could not have presented any other objections to being deposed by Sugarhill, plaintiff's motion is granted. The parties are to agree upon a mutually convenient time for the deposition, but in no event shall the deposition be taken later than thirty days from the date of this Order.

In sum, Motown's motion to vacate is hereby GRANTED in part—only insofar as Motown is permitted to designate another employee to testify on its behalf regarding the consents allegedly obtained herein—and is DENIED in all other respects. James's motion for a protective order is hereby DENIED. Sugarhill's motion to compel James's appearance at a deposition is hereby GRANTED.

SO ORDERED.

---

**6.** The location of the attorneys for the parties is a relevant factor. *Haymes*, 16 F.R.D. at 123.