## In re HONDA AMERICAN MOTOR CO., INC. DEALERSHIP RELATIONS LITIGATION.

### MDL 95–1069.

United States District Court,
D. Maryland.

Aug. 30, 1996.

Richard B. McNamara, Wiggin & Nourie, Manchester, NH, William A. Kershaw, Kronick, Moskovitz, Tiedemann & Gerard, Sacramento, CA, Robert B. Green, Baltimore, MD, James Ulwick, Kramon & Graham, Baltimore, MD.

Robert A. Van Nest, Keker & Van Nest, San Francisco, CA.

Jeremiah T. O'Sullivan, Choate, Hall & Stewart, Boston, MA.

Harvey G. Sanders and Tammy McKnew, Leatherwood, Walker, Todd & Mann, P.C., Greenville, SC.

Michael M. Baylson, Duane, Morris & Heckscher, Philadelphia, PA.

Norman C. Hile, Orrick, Herrington & Sutcliffe, Sacramento, CA.

Christopher J. Hunt, Bartko, Zankel, Tarrant & Miller, San Francisco, CA.

Lawrence Silver, Lawrence Silver & Associates, Long Beach, CA.

Andrew W. Stroud, Orrick, Herrington & Sutcliffe, Sacramento, CA.

Mark P. Rapazzini, Rapazzini & Graham, San Francisco, CA.

Daniel G. Clodfelter, Moore & Van Allen, Charlotte, NC.

Price O. Gielen, Neuberger, Quinn, Gielen, Rubin & Gibber, P.A., Baltimore, MD.

Thomas X. Glancy, Jr., Gordon, Feinblatt, Rothman, Hoffberger & Hollander, LLC, Baltimore, MD.

## OPINION

MOTZ, Chief Judge.

Plaintiffs have served notices of deposition on Honda Motor Co., Ltd. ("Honda Japan"), pursuant to Fed.R.Civ.P. 30(b)(6), naming four individuals, Tetsuo Chino, Takeo Okusa, Yoshide Munekuni and Michiaki Shinkai, as deponents. Honda Japan has moved to quash these notices and requests a protective order pursuant to Fed.R.Civ.P. 26(c). It makes essentially two arguments in support of its motion. First, assuming that the named individuals are "directors, officers or managing agents" of Honda Japan (thus resulting in Honda Motor's deposition "through" them), principles of international comity require this Court, in its discretion, to rule that any depositions of the named deponents should be conducted in Japan pursuant to Japanese procedural rules. Second, two of the named deponents, Okusa and Chino, are not "managing agents" of Honda. For the following reasons, the motion will be granted in part and denied in part.

## I.

The notices state that the depositions are to take place in Baltimore, Maryland. Honda Japan argues that the depositions of the four named individuals should be taken, if at all, in Japan pursuant to Japanese discovery rules and procedures. The basis for this conclusion rests on notions of international comity; according to Honda, subjecting Japanese nationals who reside in Japan to American-style discovery procedures, and requiring them to travel to the United States in order to give depositions, would be an affront to Japanese sovereignty.[1]

■ International comity refers to the spirit of cooperation in which a domestic tribunal decides cases touching on the interests of other sovereign states. *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court*, 482 U.S. 522, 543 n. 27, 107 S.Ct. 2542, 2555 n. 27, 96 L.Ed.2d 461 (1987). " 'Comity,' in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 163–64, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895). If foreign sovereignty is in fact implicated in a given case, comity analysis requires the balancing of competing interests between the sovereigns and the parties involved. *First Nat'l Bank of Cicero v. Reinhart Vertrieb's AG*, 116 F.R.D. 8, 9 (N.D.Ill.1986).

■ In contending that substantial Japanese sovereignty issues are raised, Honda Japan points out that Japan generally disdains the United States' system of open dis-

---

1. Honda Japan has argued that I should at least stay the depositions until I have ruled on Honda's motion to dismiss. This argument is mooted in light of the fact that today I am issuing a separate opinion in which I hold that Honda Japan is a proper defendant (although requiring plaintiffs to replead their allegations against Honda Japan on technical grounds).

**538**

covery and compulsory depositions. As evidence, Honda refers to the Japanese system which requires judicial officers to conduct pre-trial questioning of witnesses. *Id.* It also notes that Japan has refused to sign the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, 23 U.S.T. 2555, and has restricted discovery within its territory pursuant to the Consular Convention and Protocol, 15 T.I.A.S. 768, 795, to *voluntary* depositions only. Second, Honda asserts that Japanese nationals would consider a compulsory deposition in the United States deeply offensive and embarrassing, and a violation of their cultural and social norms. *See* Konaka Decl. ¶ 7.

■ While these allegations might demonstrate Japan's animosity towards common law discovery, they are insufficient for me to conclude that compulsory depositions of Japanese nationals, taking place in the United States, violates Japanese sovereignty. Discovery requests implicate foreign sovereignty only in certain contexts. For instance, if a federal court compels discovery on foreign soil, foreign judicial sovereignty may be infringed, but when depositions of foreign nationals are taken on American or neutral soil, courts have concluded that comity concerns are not implicated. *See In re Anschuetz & Co.,* 754 F.2d 602, 608 n. 13 (5th Cir.1985) (court had personal jurisdiction over German corporation and its managing agents; "where the district court's order is an order that [depositions] will be compelled only in the United States, there can be no invasion of German sovereignty"), *vacated,* 483 U.S. 1002, 107 S.Ct. 3223, 97 L.Ed.2d 730 (1987); *Work v. Bier,* 106 F.R.D. 45, 51 (D.D.C.1985) ("If [foreign nationals] are subject to the court's jurisdiction, ... then the court may order that they be produced for deposition; violation of the other country's judicial sovereignty is avoided by ordering that the depo-

sition take place outside the country.") (internal quotations omitted); *Slauenwhite v. Bekum Maschinenfabriken, GmbH, C.,* 104 F.R.D. 616, 618 (D.Mass.1985) ("The [taking of depositions in New York City of foreign nationals] does not involve any ... intrusion on French sovereignty or judicial custom. No adverse party will enter on French soil to gather evidence.") (internal quotations omitted), *vacated,* 483 U.S. 1002, 107 S.Ct. 3223, 97 L.Ed.2d 730 (1987); *First Nat'l Bank of Cicero,* 116 F.R.D. at 9 ("[A]lthough defendant would presumably compile the documents in Switzerland, the actual discovery process could be performed outside Swiss territory. Any intrusion on Swiss sovereignty will thereby be restricted."). Compelling the depositions of Honda Japan managing agents and Japanese nationals in Baltimore, Maryland, does not, in itself, infringe on Japanese judicial sovereignty.[2]

■ Honda's proffer of Mr. Konaka's Declaration is likewise insufficient to demonstrate that the Japanese government would consider the taking of these depositions an affront to its sovereignty. While Mr. Konaka may have been a respected Japanese judge for the past 12 years, he does not speak on behalf of the Japanese government as whole, or even the Japanese court system. The failure of the Japanese government to weigh in as *amicus curie* on this matter is further evidence that its sovereignty is not implicated by taking depositions of the named individuals who have done business in the United States for a number of years. *See Slauenwhite,* 104 F.R.D. at 619. The fact that the named deponents are Japanese nationals simply does not raise, without more, Japanese sovereignty concerns requiring a full comity analysis. *See In re Messerschmitt Bolkow Blohm,* 757 F.2d 729, 733 (5th Cir. 1985) ("[A] district court order that [Japanese] nationals be produced for deposition in the United States might concern [Japan], but

---

2. Comity concerns also arise when a discovery request requires a foreign national to violate his or her country's own laws. *See generally Societe Nationale,* 482 U.S. at 544–45 n. 29, 107 S.Ct. at 2555–57 n. 29. Many countries have passed so called "blocking statutes" in an attempt to prohibit its nationals from complying with American discovery requests, particularly in antitrust litigation. *Id.; see also Anschuetz,* 754 F.2d at 614 n. 29. While such blocking statutes may implicate

foreign sovereignty concerns, these laws are insufficient in and of themselves for a district court to restrain its power to compel discovery under a comity analysis. *See Societe Nationale,* 482 U.S. at 544–45 n. 29, 107 S.Ct. at 2555–57 n. 29. Here, Honda makes no argument that any Japanese blocking statute exists prohibiting the named individuals from giving depositions in the United States. Japanese sovereignty is therefore not implicated in this way.

it does not involve alien procedures on [Japanese] soil, is directed to the party-defendant and not the foreign witnesses, and is enforceable only by procedures and sanctions directed to a party to the litigation in the forum court."), *vacated,* 483 U.S. 1002, 107 S.Ct. 3223, 97 L.Ed.2d 730 (1987).

▮ Even if I were to conclude that Japanese sovereignty interests were sufficiently strong to require me to apply a balancing test, I would find that the depositions of Honda Japan's managing agents should be conducted in the United States. To the extent Japanese sovereignty is implicated by the compulsory deposition of its nationals in the United States, it is limited due to the lack of intrusiveness of the discovery requested. Again, plaintiffs' request does not call for the inspection of buildings, the collecting of documents, the interviewing of non-party witnesses, or the taking of depositions on Japanese soil. *See Anschuetz,* 754 F.2d at 608–09. Moreover, the named Japanese nationals are not occasional visitors to the United States. They have conducted extensive business in the United States for a number of years, availing themselves of the laws and protections afforded American citizens.[3]

On the other hand, the sovereignty concerns of the United States are clearly implicated in this litigation, and would be severely infringed if, pursuant to Honda Japan's request, Japanese officials were to conduct the pre-trial questioning of the named deponents under Japanese procedure. The United States has a clear interest in maintaining the integrity of its judicial system and the power of its jurisdiction over persons doing business in the United States. *First Nat'l Bank of Cicero,* 116 F.R.D. at 9; *see Work,* 106 F.R.D. at 55–56. An open discovery process helps maintain this integrity by ensuring that facts necessary for a proper and just adjudication are disclosed. *First Nat'l Bank of Cicero,* 116 F.R.D. at 9. "Thus, solicitude for foreign procedures here would be a particularly significant intrusion upon American sovereignty." *Id.* Furthermore, this litigation

does not simply involve issues of common law contract and fraud. It involves questions arising under the antitrust laws and central U.S. policy concerning economic regulation and free-market competition. In *In re Uranium Antitrust Litig.,* 480 F.Supp. 1138, 1154 (N.D.Ill.1979), the court noted:

> [The antitrust laws] have long been considered cornerstones of this nation's economic policies, have been vigorously enforced and the subject of frequent interpretation by our Supreme Court. They are as important to the preservation of economic freedom and our free-enterprise system as the Bill of Rights is to the protection of our fundamental personal freedom.

*Id.* (quoting *United States v. Topco Associates, Inc.,* 405 U.S. 596, 610, 92 S.Ct. 1126, 1134–35, 31 L.Ed.2d 515 (1972)); *see also Laker Airways Ltd. v. Pan American World Airways,* 103 F.R.D. 42, 50 (D.D.C.1984) ("The subject matter of this lawsuit is the American anti-trust laws. This implicates both United States' public policy interests of a special significance and well-established foreign antagonisms to those laws."). Accordingly, United States' concerns with its own judicial sovereignty outweighs Japan's under the circumstances presented here.

As to the litigants themselves, it would be patently unfair to constrain plaintiffs' ability to discover facts necessary to make their case by allowing Honda Japan's managing agents to be deposed in Japan pursuant to Japanese rules. While the scope of plaintiffs' discovery would necessarily be limited under Japanese law, Honda Japan would have free reign to discover all relevant facts pursuant to the Federal Rules of Civil Procedure. *See Anschuetz,* 754 F.2d at 606; *First Nat'l. Bank of Cicero,* 116 F.R.D. at 10; *Messerschmitt,* 757 F.2d at 732. Moreover, the plaintiffs persuasively argue that the travel costs of deposing Honda's four managing agents in Baltimore would be far less than if all plaintiffs and their attorneys (as well as other defendants and their counsel) were required to travel to Japan. Furthermore, most of the relevant documents in this case, which the parties may need to refer to at

---

**3.** While certainly not dispositive, the record indicates that the named deponents, or at least some of them, have given depositions in the United States on prior occasions. The argument that

giving a deposition now would be offensive and embarrassing, and would violate their cultural norms, is thus mitigated to some extent.

deposition, are being held at a depository in Baltimore. Finally, the interest in resolving this litigation in a reasonably expeditious fashion, *see, e.g.,* Civil Justice Reform Act of 1990, 28 U.S.C. § 471 *et seq.,* is best served by compelling Baltimore as the situs for these depositions. The added delay in having depositions taken in the Japanese language, of having subsequent English translations made, and in the additional procedural steps necessary for having depositions taken in Japan could unduly prolong this litigation. *See Work,* 106 F.R.D. at 55. Both comity and judicial economy require the deposition of Honda Japan's managing agents in Baltimore, Maryland.

## II.

 Only a party to the litigation may, of course, be compelled to give testimony pursuant to a notice of deposition. *United States v. Afram Lines (U.S.A.), Ltd.,* 159 F.R.D. 408, 413 (S.D.N.Y.1994). When a party is a corporation, such notice of deposition must be given to it pursuant to Fed. R.Civ.P. 30(b)(6). If the examining party notices the corporation alone, the corporation must designate who will speak on its behalf. Fed.R.Civ.P. 30(b)(6). The examining party has the power itself, however, to designate deponents who will speak for the corporation, but only if the named individuals are "directors, officers, or managing agents." *See id.* (Advisory Committee Note to 1970 amendments); *Founding Church of Scientology of Washington, D.C. v. Webster,* 802 F.2d 1448, 1451 (D.C.Cir.1986) (Advisory Committee Note makes clear that new procedure does not supplant but " 'supplements existing practice whereby the examining party designates the corporate official to be deposed' "), *cert. denied,* 484 U.S. 871, 108 S.Ct. 199, 98 L.Ed.2d 150 (1987). Determining whether an individual qualifies as a "managing agent" of a corporation must be made at the time of the deposition. *See, e.g., Curry v. States Marine Corp. of Del.,* 16 F.R.D. 376, 377 (S.D.N.Y.1954). While the burden of proof rests on the party seeking discovery, doubt about an individual's status as a "managing agent," at the pre-trial discovery stage, are

resolved in favor of the examining party. *See, e.g., Webster,* 802 F.2d at 1452 n. 4. If an examining party fails to meet its burden, it must resort to Fed.R.Civ.P. 45 for subpoenas on non-party witnesses. *Afram Lines,* 159 F.R.D. at 413. If the witness is overseas, a party must resort to procedures outlined in the Hague Convention or another applicable treaty. *Id.*

Honda Japan contends that even if foreign nationals can be compelled to give depositions in the United States under principles of international comity, Takeo Okusa and Tetsuo Chino, two of the four designated deponents named in the notice of deposition served on Honda Japan, are not "directors, officers, or managing agents" of Honda Japan, and therefore Honda cannot be deposed "through" them.[4]

### A. *Takeo Okusa*

 "The law concerning who may properly be designated a managing agent is sketchy." *Webster,* 802 F.2d at 1452. Because the factual circumstances in which the term managing agent must be applied differs greatly among cases, the test must be a functional one and the determination made on a case-by-case basis. *Id.* Courts are generally agreed, however, on the controlling factors used in deciding whether an individual is a managing agent of a corporation. These factors include: (1) whether the corporation has invested the person with discretion to exercise his judgment, (2) whether the employee can be depended upon to carry out the employer's directions, and (3) whether the individual can be expected to identify him or herself with the interests of the corporation as opposed to the interests of the adverse party. *See Reed Paper Co. v. Proctor & Gamble Distrib. Co.,* 144 F.R.D. 2, 4 (D.Me.1992); *Colonial Capital Co. v. General Motors Corp.,* 29 F.R.D. 514, 516–17 (D.Conn.1961); *see also Sugarhill Records Ltd. v. Motown Record Corp.,* 105 F.R.D. 166, 170 (S.D.N.Y.1985); *Afram Lines,* 159 F.R.D. at 413; *Independent Prods. Corp. v. Loew's, Inc.,* 24 F.R.D. 19, 25 (S.D.N.Y.1959). Other factors to consider include the degree

4. Honda Japan does not dispute that, principles of comity aside, both Yoshihide Munekuni, Honda Japan's Executive Vice President, and Mich-iaki Shinkai, a member of its Board of Directors, are directors and/or officers within the meaning of Fed.R.Civ.P. 30(b)(6).

of supervisory authority which a person is subject to in a given area and the general responsibilities of the individual regarding the matters at issue in the litigation. *See Sugarhill,* 105 F.R.D. at 170. The "paramount test" is whether the individual can be expected to identify with the corporation's interests as opposed to an adversary's.

■ Okusa, as present General Manager of Public Relations at Honda Japan, clearly satisfies the "paramount test:" as a present employee, he continues to maintain an "identity of interest" with Honda. Okusa has previously held senior management positions for Honda Japan and its subsidiaries for a period spanning over 10 years, thus evidencing a long, close relationship with the corporation. He formerly served as an Executive Vice President of American Honda, Honda Japan's domestic subsidiary. His present position as the spokesman for Honda Japan itself suggests that what Okusa says, and what he might say at deposition, will be closely identified with, and in furtherance of, the interests of Honda. Defendant proffers no evidence, and makes no suggestion, that Okusa is no longer loyal to the corporation or does not still identify himself with the its interests. Furthermore, Okusa can be depended upon to carry out his employer's direction to give testimony; as a present employee, Honda Motor can compel his appearance. *See Boston Diagnostics Dev. Corp., Inc. v. Kollsman Mfg. Co.,* 123 F.R.D. 415, 416 (D.Mass.1988).

Honda Japan primarily contends that Okusa's position as General Manager of Public Relations is not senior enough in the corporate hierarchy to have him speak on its behalf. It argues that Okusa has no final authority to bind Honda on issues related to his position or on anything related to Honda Japan's American subsidiaries. However, the issue is not whether Okusa has the power to bind Honda Japan in the contractual sense, but whether Honda has invested him with general powers to exercise his judgment and discretion in a position of trust. *See Colonial Capital,* 29 F.R.D. at 516–17. Clearly, an official spokesman for a major corporation has been imbued with trust. Okusa is not simply a "common employee," but one with "at least a consciousness of the problems of management." *See Loew's,* 24 F.R.D. at 25.

### B. *Tetsuo Chino*

■ With respect to Chino, however, Plaintiffs have failed to meet their burden of proof demonstrating that he is presently a managing agent of Honda Japan. The general rule is that former employees cannot be managing agents of a corporation. *Colonial Capital,* 29 F.R.D. at 515 (citation omitted) (recently retired Vice President of General Motors cannot be considered managing agent at time of deposition); *see also Mitchell v. American Tobacco Co.,* 33 F.R.D. 262, 263 (M.D.Pa.1963) (former president of corporation not a managing agent after retirement); *Frasier v. Twentieth Century–Fox Film Corp.,* 22 F.R.D. 194, 197 (D.Neb.1958) (corporation not required to produce former officer and director for deposition). Again, the test for determining whether one is a managing agent must be made at the time of deposition. *See Loew's,* 24 F.R.D. at 24–25. There are exceptions to the general rule, however, particularly when a corporation terminates a managing agent in an attempt to avoid disclosure in pending or potential litigation, *see, e.g., Loew's,* 24 F.R.D. at 23–24, when there is evidence that the managing agent has been or might be reappointed to another position in the corporation, *see Curry,* 16 F.R.D. at 377, or when the former employee still has ultimate control with the ability to utilize an entity's organs of communication. *See Webster,* 802 F.2d at 1455–57.

■ As the record now stands, plaintiffs have failed to produce any evidence that Chino is presently an employee of Honda Japan or otherwise acts as its agent. Formerly the President of American Honda, Chino retired in 1989. Honda Japan concedes that he remained as an advisor to Honda Japan thereafter until June 1993. Defendant contends, with evidence in support, that Chino ended his association with Honda at that time and presently plays no role for the corporation. Yamaoka Supp.Decl. ¶ 2. The only additional evidence that plaintiffs proffer is a 1994 magazine article report which names Chino as a "project contact" and Managing Director at Honda Japan. *See Pls.' Ex. FF.* While the accuracy of this report is persuasively challenged by Honda, the report

still fails to show Chino's *present* status as a managing agent in 1996. Furthermore, Plaintiffs make no proffer that Honda Japan terminated Chino to avoid disclosure, or that he maintains any control over Honda Japan today. While his interests may still be closely identified with the defendant, Honda Japan cannot compel his presence at deposition.

## ORDER

For the reasons stated in the memorandum entered herewith, it is, this 30th day of August, 1996,

ORDERED that defendant Honda Japan's motion to quash deposition notices is granted as to Tetsuo Chino, but is otherwise denied.